The **PROCTER & GAMBLE COMPANY, Plaintiff,**

v.

**NABISCO BRANDS, INC., Keebler Company and Frito-Lay, Inc., Defendants.**

**Civ. A. No. 84–333 LON.**

United States District Court, D. Delaware.

March 25, 1986.

Robert H. Richards, III (argued) and Robert W. Whetzel of Richards, Layton & Finger, Wilmington, Del. (Jerome G. Lee (argued), Harry C. Marcus (argued), John F. Sweeney and Christopher A. Hughes of Morgan, Finnegan, Pine, Foley & Lee, New York City, Julius P. Filcik, Rose Ann Dabek and Richard C. Witte of Procter & Gamble, Cincinnati, Ohio, of counsel), for plaintiff The Procter & Gamble Co.

Mary B. Graham of Morris, Nichols, Arsht & Tunnell, Wilmington, Del. (Paul Heller (argued) of Kenyon & Kenyon, New York City, of counsel), for defendant Nabisco Brands, Inc.

Howard M. Handelman (argued) of Bayard, Handelman & Murdoch, Wilmington, Del. (Daniel M. Riess (argued) of Lockwood, Alex, Fitzgibbon & Cummings, Chicago, Ill., William Glendon of Roger & Wells, New York City, Craig S. Stevens of Keebler Co., Elmhurst, Ill., of counsel), for defendant Keebler Co.

James F. Burnett of Potter, Anderson & Corroon, Wilmington, Del. (Wayne Harding (argued), and Peter J. Shurn, II (argued) of Arnold, White & Durkee, Houston Tex., Terrence D. Dreyer of Frito-Lay, Inc., Dallas, Tex., of counsel), for defendant Frito-Lay, Inc.

LONGOBARDI, District Judge.

Plaintiff, The Procter & Gamble Company ("P & G"), has sued Nabisco Brands, Inc. ("Nabisco"), Keebler Company ("Keebler") and Frito-Lay, Inc. ("Frito-Lay") for patent infringement. Massive discovery has been undertaken by all parties and, of course, there has been the attendant problem of the protection of trade secrets and other confidential information. P & G and Keebler have stipulated to the entry of a protective order pursuant to Federal Rule of Civil Procedure 26(c). The parties have agreed to discovery limitations on the use of an opponent's proprietary information[1] and a limited authorization to receive and view a producing party's confidential communications.[2] Under the protective order, a party imposes discovery restrictions on its documents by stamping on each page a

---

1. "Proprietary Information" is a defined term in the Order, Docket Item ("D.I.") 97B, Exhibit 1, p. 2. It includes the producing party's trade secrets, confidential research and various other confidential commercial information.

2. The protective order is principally an "attorney's eyes only" discovery device. It facilitates the production and receipt of information by restricting discovery basically only to the opposing party's counsel.

legend identifying the material as "Proprietary Information."[3]

For purposes of the instant motion, the pertinent section of the protective order is paragraph 16. D.I. 97B, Exhibit 1, p. 13. Briefly, paragraph 16 contains the procedures to be employed by a party receiving documents stamped as "Proprietary Information" when it disagrees with the proprietary designation and wants to have the discovery restrictions lifted. In such a case, the receiving party may seek cancellation of the "Proprietary Information" designation with respect to any document it suspects is not proprietary by serving on the producing party a written request for the cancellation of the designation and providing reasons supporting its contention that the document is not subject to the protective order's restrictions. The request becomes effective unless, within thirty days after receipt of the request, the producing party moves the Court for a protective order. The stipulation also provides that a hearing be held to decide whether a protective order should issue with respect to the documents under dispute. The producing party has the burden to establish the confidentiality of each contested document.[4]

Pursuant to the Order, P & G notified Keebler that it was requesting cancellation of Keebler's Proprietary Information designation with respect to sixty-four[5] documents. P & G maintained that the documents on their faces do not contain proprietary information of Keebler. D.I. 93, Exhibit A. P & G's counsel also concluded from his inspection of the information in the documents that they were pertinent only to P & G and third parties.

Keebler responded that although the documents do not contain information about Keebler's internal operations, the documents are proprietary because they "are Keebler's internally generated photos and papers containing information gathered by Keebler about its competitors." D.I. 93, p. 5. In other words, the documents which arguably disclose P & G's internal processes and products, and were acquired through the use of "informants" and "sources", are purportedly proprietary since the methods by which the information was acquired by Keebler constitutes Keebler's trade secrets and confidential communications.

Keebler has attempted unsuccessfully to resolve the dispute over these documents without resort to a further protective order. Keebler proposed a partial lifting of the proprietary restrictions to allow P & G attorneys to use the documents during their examination of third-party witnesses who had a relationship to the information in the documents. This would provide P & G the ability to verify whether the information in the documents was acquired through the use of unfair competition. P & G has refused to accept this compromise but instead offered its own compromise, that upon its receipt of unrestricted access to the documents, it would not release the documents to the news media during the pendency of the suit. Keebler rejected that offer. Again, as seems to have become the usual course of dealing in this protracted patent litigation, the parties have been unable to resolve this discovery dispute and have left the job to the Court.

By asserting that the documents are "trade secrets", the producing party has

---

3. The legend as set forth in the Protective Order is as follows:
 "PROPRIETARY INFORMATION DESIGNATED BY (NAME OR PARTY) UNDER PROTECTIVE ORDER. UNITED STATES DISTRICT COURT DISTRICT OF DELAWARE."

4. The receiving party has the burden to prove that a particular document is not subject to the Order for reasons that it is in the public domain or was obtained independently and legally by the receiving party. D.I. 97B, Exhibit 1, p. 12, ¶ 15. These exceptions are not material to the present motion.

5. There is disagreement between the parties as to the number of documents under dispute. P & G lists 64 documents in its cancellation request, D.I. 93, Exhibit A, whereas Keebler refers to 51 documents. D.I. 93, p. 4. The Court has received the documents from Keebler and counts a total of 66.

impliedly invoked the provisions of Federal Rule of Civil Procedure 26(c)(7). The Court's analysis of the dispute raises two questions: First, is the document sought to be protected "a trade secret or other confidential research, development or commercial information?" *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F.Supp. 866, 889 (E.D.Pa.1981). Second, has the party seeking protection shown "good cause" in that disclosure of the information would work a "clearly defined and serious injury?" *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir.1984); *Zenith Radio Corp.*, *id.* at 891.

## A. Photographs and Drawings of P & G Facility

Of the total contested documents, a significant number clearly do not qualify as proprietary information and should not be cloaked by a protective order. These consist of photos taken on Keebler's behalf of the Jackson, Tennessee P & G facility and various notes and drawings of the site. The photographs were taken in late 1983 while the facility was still under construction. Presumably, these photographs and other materials were taken with the hope of obtaining some insight into P & G's intended processes to develop and manufacture its cookies.

■ The Court cannot conceive of any possible basis for Keebler's contention that discovery of these photographs, notes and drawings should be restricted by use of a protective order. The photographs are simply pictures of the facility which were taken from the side of a highway. Hearing Transcript of September 27, 1985 ("Hearing Transcript"), p. 51. Keebler's counsel admits that the "[p]hotograph itself means nothing." Hearing Transcript, p. 51. Instead, Keebler views the very existence of the photographs as a trade secret because "[they do] show how and to

what extent Keebler is successful or unsuccessful in obtaining information about Procter & Gamble." Hearing Transcript, p. 51.

Keebler cannot meet its burden to show that the information contained within the photographs or even the method the company employed to obtain the photographs is a trade secret under the Federal Rules of Civil Procedure. First, the photographs do not contain proprietary or confidential information belonging to Keebler. Second, the photographs were obviously taken by an individual or individuals at a location off from the P & G property. Anyone walking or driving by the location would have seen the same sight. The fact that the event was recorded by Keebler on photographic film does not render the event any more significant.[6]

■ The same conclusion must be reached with respect to the drawings made by Keebler from its surrepticious inspection of the P & G facility and the notes recorded by the photographer or his/her associates. Again, the notes and drawings were derived from Keebler's roadside inspection of the facility. They contain only Keebler's speculation as to the possible functions of the various structures on the property. Nothing contained in the photographs, notes or drawings can possibly be reasonably construed as a trade secret. It is equally incredible that the methods by which they were obtained could constitute a trade secret.

For the aforementioned reasons, Keebler's motion for a further protective order is denied with regard to these photographs, drawings and documents:

### Photographs

| Set "A" | Set "B" [7] | |
|---|---|---|
| 030214 | (030221) | Photo of P&G Jackson, Tennessee facility |
| 030215 | (030222) | Photo of P&G Jackson, Tennessee facility |
| 030216 | (030223) | Photo of P&G Jackson, Tennessee facility |
| 030217 | (030224) | Photo of P&G Jackson, Tennessee facility |
| 030218 | (030225) | Photo of P&G Jackson, Tennessee facility |
| 030219 | (030226) | Photo of P&G Jackson, Tennessee facility |

6. Keebler apparently is asking the Court to decide that the fact that it had a photographer present across the street from the P & G facility on the date in question constitutes a trade secret. The absurdity of this position deserves no further comment.

7. Set "B" is a duplicate set of Set "A." All duplicates are listed as pairs with one member in parenthesis. Each six digit number is the identifying number for a particular document.

**Documents**

| | | |
|---|---|---|
| 030227 | (030234) | Handwritten key to photo set "A" |
| 030228 | (030235) | Handwritten key to photo set "B" |
| 030232 | | Typed key to photo set "A" |
| 030233 | | Typed key to photo set "B" |
| 030239 | | "Businessman's Map of Jackson" |

**Drawings**

| | | |
|---|---|---|
| 030211 | (030212) ] | Drawings of P&G Jackson, Tennessee fa- |
| 000520 | (030229) ] | cility derived from roadside inspection |
| | (030230) ] | and photographs |
| 030213 | (030220) ] | |

## B. Keebler's Internal Memoranda

 The Court has reviewed these documents and finds that they cannot reasonably be construed as being of a proprietary nature to Keebler. Keebler argues that it is not the content of the documents but the context that is important here and urges the Court to recognize the inherent value to Keebler in maintaining its ability to acquire P & G's proprietary information through the use of "informants", "sources" and, in P & G's words, "moles." P & G counters that a protective order should not be maintained over these memoranda because they are not Keebler's "trade secrets" and further because P & G requires the withheld documents in its prosecution of the unfair competition claim it maintains against Keebler in this suit. Indeed, close review of these internal memoranda does suggest that they may contain proprietary information of P & G.

 As discussed above, under Rule 26(c)(7), the party seeking a protective order has the burden to show both (1) that the information sought to be protected is a trade secret, and (2) "good cause" in that its disclosure would work a "clearly defined and serious injury." *Publicker Industries, id.* at 1071. In order to show good cause, the injury which allegedly will result from disclosure must be shown with specificity. Conclusory statements to this effect are insufficient. *Zenith Radio Corp., id.* at 891. A protective order should not issue based only upon counsel's

arguments in its briefs; the party seeking to protect itself from competitive disadvantage due to disclosure of sensitive information should support its allegations of serious injury with affidavits or depositions. *Id.*

The Court is not persuaded by Keebler's arguments either that the documents under dispute are deserving of trade secret protection or that disclosure of the documents will cause serious injury to Keebler or place it at a competitive disadvantage.

### 1. The Documents in Dispute Are Not Trade Secrets.

Keebler argues that the standard for a document to qualify as a trade secret under Delaware law is that it contains "[a] company's confidential information which is of economic value to its competitors." D.I. 93, p. 8. Applying this standard to the documents in dispute, Keebler concludes that its methods of obtaining information about its competitors (*i.e.,* P & G) are trade secrets and that disclosure of the documents to P & G would be improper as it would provide P & G the ability to "stop the flow of such information to the company [Keebler]." D.I. 93, p. 8.

The pertinent Delaware statute defines the term "trade secret" to include any "information" which otherwise qualifies for protection.[8] Keebler interprets this term very broadly and cites *American Totalisator Co., Inc. v. Autotote Limited,* C.A. No. 7286 (Del.Ch., Aug. 18, 1983) for the proposition that the scope of trade secret protection is indeed broad. *See, also,* Restatement of Torts § 757. Keebler has concluded that its methods to acquire its competitor's processes and product specifications are "information" deserving of protection under Delaware trade secret law.

 Keebler's interpretation of the Delaware trade secret statute is overly broad

---

**8.** 6 Del.C. § 2001(4).

"Trade secret" shall mean information, including a formula, pattern, compilation, program, device, method, technique or process, that:

a. Derives independent economic value, actual or potential, from not being generally

known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

and must be rejected. No case law in Delaware or in any other jurisdiction could be located to support such a broad application of trade secret protection. The reason is that not all "information" which is "secret" necessarily qualifies for trade secret protection. The document must contain information which deserves protection. *Note, Trade Secret Protection of Non-Technical Competitive Information,* 54 Iowa L.Rev. 1164, 1169 (1969).

■ Keebler's argument that the Court should provide trade secret protection to Keebler's surreptitious methods to acquire P & G's intended operating procedures cannot withstand judicial scrutiny. The documents themselves contain references to Keebler's information gatherers as "informants [sic]", "sources" and "contacts." Some of these contacts were (according to the documents) personnel of a corporation which at that time maintained a confidential relationship with P & G. D.I. 97B, Exhibit 4. The question of whether these documents constitute Keebler trade secrets is a question easily resolved against Keebler. Whether they constitute or demonstrate unfair competition on the part of Keebler is a matter that will be resolved at trial. In addition, the documents are not "trade secrets" since disclosure of the "information" would not be a detriment to Keebler; the information has not been shown to derive independent economic value under Delaware law. Disclosure of the memoranda would only inform P & G of the status of P & G's own products and processes in 1982–1983. Requiring Keebler to turn over those documents will not provide a windfall to P & G since their content should certainly not be a revelation to the company.

### 2. Keebler Has Failed to Show Good Cause.

■ Even if Keebler had been able to satisfy its burden to demonstrate that the documents are trade secrets, Keebler has failed to show "good cause" that disclosure of the documents will be to its competitive disadvantage. *First,* Keebler relies solely on its attorneys' arguments to support its assertion of trade secret protection. No affidavits or depositions have been placed in the record to support its conclusion. This is true even though the failure to provide this necessary support was brought to its attention by its adversary, P & G. D.I. 97, p. 15. Without supporting documentation, Keebler has left the Court with the burden to speculate as to the possible injury such disclosure would cause. The Court cannot conclude, based on its *in camera* inspection, that disclosure of these documents will be to Keebler's competitive disadvantage. If there is potential injury to Keebler, it is well hidden. This is not a case where affidavits are unnecessary because the injury from disclosure is patent. *Cf., Zenith Radio Corp.,* 529 F.Supp. at 891.

*Second,* the information contained within these documents is two to three years old. Even if Keebler has a legitimate claim to maintain secrecy in its methods of securing such competitive information, Keebler has not shown that disclosure of this old information at this time will harm it. Both Keebler and P & G currently have their competitive products on the market; it is hard to imagine how Keebler's methods for acquiring information three years ago concerning the physical construction of P & G's cookie facility warrant protection from disclosure at this late date.

Therefore, Keebler's motion for a further protective order is denied with regard to the balance of its withheld documents:

| Document # | Duplicate |
|---|---|
| 000045–46 | |
| 000127 [9] | (000599) [9] |
| 000128 | (000333) |
| 000129 | (000592) |

---

**9.** The Court expresses no opinion concerning Keebler's claim of attorney-client privilege on these documents. The claim is apparently unopposed by P & G. D.I. 94, p. 4, n. 1.

| Document # | Duplicate |
| --- | --- |
| 000130 | (000590) |
| 000131 | (000593) |
| 000132 | |
| 000133 [10] | |
| 000149 | |
| 000375–79 | |
| 000512–13 | |
| 000517 | |
| 000518 | (030209) |
| 000519 | (030210) |
| 000594 | |
| 000597–98 | |
| 001493–94 | |
| 003264–65 | |
| 007950–51 | |
| 030208 | |
| 030231 | |
| 030236 | |
| 030240. | |

10. This document was submitted for *in camera* review but is not part of P & G's formal "Proprietary Information" cancellation request. D.I. 93, Exhibit A.